## STATE v. GILLESPIE.

No. 7364. Decided January 3, 1950. (213 P. 2d 353.)

Rehearing Denied April 3, 1950.

See 52 C. J. S., Larceny, sec. 129. Larceny, elements constituting, see note, 144 A. L. R. 1383. See, also, 32 Am. Jur. 896.

*McCullough, Boyce & McCullough,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Atty. Gen., *Brigham E. Roberts,* Dist. Atty., Salt Lake City, *Mark K. Boyle,* Asst. Atty. Gen., for respondent.

LATIMER, Justice.

The appellant was charged with the crime of grand larceny. He waived his right to a trial by jury, was tried before a judge, and was convicted of the crime as charged. He appeals from the judgment of conviction and in substance urges the three following grounds for reversal: (1) The evidence is insufficient to establish that the stolen property was ever delivered to or in possession of the Deseret Book Store; (2) the evidence is insufficient to establish a wrongful taking; and, (3) the court erred in the admission of certain evidence.

In regard to contention number (1) that the evidence is insufficient to show the receipt of the camera by the Deseret Book Company, the state presented testimony from which the trial judge could find, beyond a reasonable doubt, that on November 9, 1946, a Filmo Automaster Camera, bearing serial No. 434168, was received from the Bell & Howell Company by the Deseret Book Company. The general manager of the Deseret Book Company testified that in the regular course of its business,

an invoice would be received by the book company prior to the receipt of the particular type of merchandise; that on the invoices received from the Bell & Howell Company, the serial numbers of the particular cameras were recorded; that upon the subsequent receipt of a camera, a clerk in the receiving department would check the serial number on the camera against the serial number on the invoice, and if they corresponded, the date the camera was received would be stamped on the invoice; that the invoice introduced into evidence which referred to a Filmo Automaster Camera, serial No. 434168, had the received stamp of the book company showing it was received on November 9, 1946; that in the regular course of business, when a camera was delivered to the camera department of the Deseret Book Company, the department head or clerk was required to receipt on the invoice for delivery of the particular goods; that there is, on the invoice in evidence, a notation showing receipt of a camera serial No. 434168 by an employee of the department on November 13, 1946; that cameras are usually shipped as individual items and after receipt of an invoice covering a particular camera, if it is not received within a reasonable time, a check is made with the Bell & Howell Company to determine whether or not it has been shipped; that after a camera is received and checked in, as required by the custom of the business, the invoice is sent to the auditing department and payment made. In this particular instance, the usual course of business was followed and a camera of the type covered by the invoice was on display in the camera department. This evidence is sufficient to establish that the camera was received and in the possession of the Deseret Book Company.

As to the second contention that the evidence is insufficient to show a larceny of the camera, the state adduced the following evidence: The manager of the camera department, a Mr. Williams, testified that one camera with a 2.5 lens was found to be missing around the 8th or 9th day of May, 1948; that a week or two later another camera with

three lenses was found missing; that these two cameras had been in the display case a few days prior to the time they were missed; that he reported to the general manager that the cameras were missing and that shortly thereafter he contacted various stores in Salt Lake City to notify them of the loss of the cameras and made a trip around to the stores to leave word that these cameras were missing; that within a week after the discovery of the missing cameras, he went to the Auerbach Department Store and contacted a Mr. Linschoten and requested him to look out for the missing cameras; that the cameras are an expensive item and are rather hard to sell; that he had not made a check to determine whether any of the type cameras involved were sold during May of 1948; that he had not examined the records to determine whether or not the cameras had been sold; and as far as he knew, an examination had not been made; that he did not know of his own knowledge whether or not one of the cameras was sold as there were too many sales made during the day to go through a month's sales.

Mr. Reiser, the general manager of the store, testified that he received a report of the missing cameras in May of 1948; that his recollection was that the report was given at an employees' meeting about May 17, 1948; that the report covered a Filmo Automaster Camera, turret-head, 16 millimeter, which was the type indicated on the invoice; that in the course of the company's business, they were able to determine the sale or loss of a camera by reference to the serial number on the sales slips; that the store practice is to record the serial number of the camera on the sales slip; that the purchaser then has the sales slip as a bill of sale and evidence of his ownership and title; that copies of the sales slip are made and retained for a period of three years; that an investigation was made to determine whether there had been a sales slip made out on camera No. 434168; and that the company had no copies in their records of any sales slip being made out on that particular camera.

Appellant's principal contention that this evidence is insufficient to establish a larceny is founded upon the testimony of Mr. Williams that he personally knew of no investigation; that he personally did not check the sales slips because of it being too arduous a task; and that the testimony of Mr. Reiser is not sufficient to foreclose the possibility of the camera being sold.

It is conceded that there could be a conflict in the testimony between Mr. Reiser and Mr. Williams, although they can be reconciled as consistent. Mr. Reiser was general manager of the store and would be in charge of all departments, Mr. Williams only one. Mr. Reiser himself or employees under his control may have made the investigation without the knowledge of Mr. Williams. Even though Mr. Reiser did not go into detail about the nature and extent of the investigation or the checking of the sales slips, he testified that a check had been made and no sales slip was found. Had appellant desired to pursue this matter further and determine with certainty the foundation for this testimony, the subject could have been developed on cross-examination. Moreover, Mr. Williams testified he had seen the cameras in the display case two or three days before they were were reported missing, and if the trial judge believed this testimony, it would not be necessary for any one to check back further than the dates the cameras were seen in the display case to establish that the camera had not been sold. Even though appellant complains that Mr. Williams could not positively identify the cameras in the show case by serial number, this is not necessary in view of the fact that identity of articles can be made by make, model and characteristics.

It was stipulated by counsel for appellant that a Bell & Howell Filmo Automaster Camera with the same serial (No. 434168) was in the possession of the defendant on June 4, 1948. At that time the testimony shows appellant entered into negotiations with Auerbach Company for the sale or

trade of the camera; that in these negotiations, he told the manager of Auerbach's Camera Department that he had borrowed the camera from a dealer in town and could not leave it with that company. The testimony further discloses that the defendant was in the Deseret Book Company at or about the time the cameras were missing; that when he was apprehended by the police department, he told a police officer he had obtained the camera from a dealer in Omaha, Nebraska; and, that he had the title papers to the camera at his home in Salt Lake City. Two police officers accompanied him to his home and after spending some time in searching his own home, appellant was unable to produce any papers showing sale or title and papers were not produced up to and during the time of trial.

The court was not confronted with any substantial dispute in the facts as the defendant did not take the stand and he failed to produce other evidence to explain his possession of the camera, to deny his apparently inconsistent statements, or to refute the testimony offered by the state. If there is any inconsistency in the evidence, it is because of the difference in stories related by the witnesses for the state. While the evidence may not be as complete as desired, it is sufficient to permit the trial judge to find beyond a reasonable doubt that the appellant is guilty. Under our statute the essential elements to be established by the state in prosecutions for larceny need be only property recently stolen, possession by the defendant, and an unsatisfactory explanation of the possession. These are all established in the present instance. The evidence is sufficient both to establish a prima facie case and to permit the court to find the defendant guilty beyond a reasonable doubt.

The next assignment of error deals with the admissibility of testimony given by Mr. Williams, manager of the camera department. The evidence objected to touches on

the information he conveyed to a representative of Auerbach Company when he requested Auerbach Company to be on the lookout for the stolen cameras. The substance of the conversation was that the Deseret Book Company had lost a camera which they suspected had been stolen. The way in which the questioned evidence was admitted developed as follows:

"Q. And what information did you convey to Mr. Linschoten? A. That we had lost a Filmo * * *

"Counsel for Defendant: Just a minute. If Your Honor please, we object to it as hearsay.

"The Court: The objection is overruled. You may not tell me just what you said, but you can tell the substance of the information you gave; that is, what it was about.

"A. I told him we had lost an Automaster camera with such a lens, 2.5 lens, and to be on the lookout for it, that we suspected it had been stolen."

As to this part of the conversation, we need not concern ourselves as the matter was tried before the court without a jury, and even were we to concede the evidence was hearsay its reception in evidence would be harmless.

If admission of any part of the conversation was inadmissible, it would be the answer given to the next question:

"Q. Did you indicate the name of any suspect. A. Yes, as I recall, I indicated that we suspected Mr. Gillespie."

There are two reasons why we need not deal with the contention that this statement was inadmissible. First, there was no objection made by appellant to the question and no motion made to strike the evidence after the testimony had been given; and second, we assume that the trial court would base the conviction on competent evidence and would not be influenced by the suspicions of a witness.

The judgment is affirmed.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.